Good morning. I'm Neal N. Taylor and I represent Dennis Torrey, the appellant in this case, and I would like to reserve some of my time for rebuttal. This appeal is from a decision of the district court in which the appellant Dennis Torrey was permanently enjoined from using or occupying a remote lodge here in Alaska, a lodge which he built and in which he and his children have lived for more than 30 years. The case was decided on summary judgment. In its decision granting the United States summary judgment, the district court dismissed Mr. Torrey's defense that the action was barred by res judicata, and the district court also dismissed Mr. Torrey's defense that the government and the people it represents are stopped from claiming that they own the lodge. The case on which the res judicata and estoppel defenses are based is a 1985 case. Let me ask you, let me stop you just a minute and I'll try to let you get this out. As I understand it, your client really doesn't contest on appeal that he was a trespasser, right? All he's contesting is if the court's decisions regarding his defenses to the claim. Because the district court found him to be a trespasser. I didn't find that in anything you appealed. You have two defenses you're raising to this trespass, but I don't see anything in here that you're denying a trespass. We certainly are not denying that he continued to occupy the property after 1991 and with his children continues to occupy it. Okay. But we are saying that there were two defenses and the principal one is res judicata. Well, actually, they're both equally valid and both grounds for reversal. Equitable estoppel and also res judicata. I want to point out also that review is de novo. It's review is de novo, not only because the case was decided on summary judgment, but also because review of the dismissal of a case where res judicata is raised as a defense review is de novo. Also central to whether res judicata bars, the claims made into it, too. That's the case before us now is the question of whether both actions arise out of the same transactional nucleus of facts. Interestingly, both sides, the government and Mr. Torrey, rely on U.S. versus liquidators of European Federal Credit Union. I want to briefly go through what's included in the transactional nucleus of facts from which both Chuitt I and Chuitt II arise. But before you go through there, I guess you can help me just a little bit. It seems to me that in Chuitt I, only Alice's right to the property was established. There was nothing in there about what your client's right to the property was, correct? In Chuitt I, I read it. Is there anything in there that says what your client got or didn't get? Yes, there is. What is there? I saw Alice get a right to property, that she was to have that property, but I didn't get anything in there that he got anything. Well, two things he got. Number one, he joined in Alice's motion and He joined in Alice's motion for her to get rights in the property, okay. Right, and that was granted. And in Judge Holland's 1991 decision, which closed the case, Judge Holland very clearly discussed the fact that it was anticipated by the federal court, by Judge Holland, that Dennis Torrey's rights in the property would be resolved one way or the other in the divorce proceedings, which were pending at that time, or resolved before the Department of Interior. But Judge Holland made that very clear in his 1991 decision, in which he dismissed with prejudice all of Patrick Chuitt's claims against Dennis Torrey. But, Mr. Hewlett, as I understand it, because he is not a Native American, he can't hold title to allotment property, is that right? That's why he wasn't included in Chuitt I, in the relief that the court ordered? Yes and no, Your Honor, and I don't mean to double-talk. No, that's all right. But Judge Holland also explained in his 1991 decision that it was Judge Holland's understanding that there were regulations that provided for conveyance of an interest in Native allotment property to a non-Native between spouses. Okay, but that never happened because in following Judge Holland's decision, there was an action by the Superior Court to resolve the property, and I think the most troublesome aspect of that proceeding is the release that Mr. Torrey signed of any claims that he might have to Alice's property. And, yes, he did sign a release to, no, not to any property that Alice might have, but he signed a release to five acres, undeveloped five acres at the far northwest corner of his Native allotment. And in the divorce agreement, Dennis Torrey got the lodge. Well, he got rights to the lodge. Right. Correct. I mean, she didn't have the lodge, so she couldn't give him the lodge. She never did get the lodge. She didn't, but what we're asking the court to do... I have no interest in this property. I'd rather have this other property to which I was deeded. And I think that the government violated its trust responsibilities to her. There's a whole, you know, there's 43 CFR... Well, it might have been a violation to her, but if she doesn't care, there's not much that can be done. I mean, she said, I want what I got. I got deeded some other property, and I want it. She didn't say anything about, well, but she didn't give me the lodge. She said, what I got is what I want. That's what different evidence would be presented into it, too. You're never going to get her to stand up after she's taken her husband to the cleaners and say, well, I didn't want my property, I wanted that first property that we never got. With all due respect, Your Honor, I disagree with that. The Alaska Native Allotment Act provides that natives cannot alienate the property without going through a process. We have federal regulation that requires a process. We have BIA guidelines that set forth a process. All that Alice Torrey did is sign an affidavit in a lawyer's office. Basically, that was a violation of the Alaska Native claims, excuse me, the Alaska Native Allotment Act, excuse me. And what we're asking the court to do is to direct Judge Holland's 1991 decision be effectuated, that the lodge be conveyed to Alice Torrey. I do not think. Don't you have to do that through a separate quiet title action, though? I mean, I'm not sure how on appeal we can grant you the relief that you're asking for. You want us to reopen the 1991 judgment? No, I'm asking you to reverse the district court, period, and say it's barred by the 1989-1991 decision, period. This case was resolved in 1991 and all these claims dismissed with prejudice. Then let the parties go through the process that's mandated by federal law, by the Alaska Native Allotment Act. But that ignores what happened in conjunction with the settlement of their property interests in the divorce action and the release that he executed in 1993. I'm sorry. I mean, I understand why you want to go back to 1991, and I guess maybe we might be able to get there, were it not for the fact that it looks to me like there's a disclaimer of any interest that he might otherwise claim through his ex-wife in that five-acre parcel, and he can't bring an adverse possession claim against this particular property. I don't think that Alice Torrey would go through the gift-deeding process and disinherit her family and her grandchildren, and they all still use the property, the lodge property. No one uses these five undeveloped acres. She never did anything with the other five acres? No, it's just undeveloped alderbush and swamp, as far as I know. The lodge is what everyone continues to use, and if you vacate the decision in Chewett 2, we're back where we were in 1991, and basically let the pieces fall where they may after that. Wasn't there a time in 1992 where Alice herself tried to get your client evicted from the property, and she couldn't do it because she found out she didn't own it? I believe you're correct, Your Honor. And then after that happened, then he was given in the divorce decree this disputed property, and she was given the property that Chewett really deeded to them, and the divorce decree and the settlement says Dee has no interest in the disputed property. No, it says he has no interest in the remote five acres. Right. And basically he may or he may not have an equitable right vis-a-vis Alice Torrey, but what we're saying is that that's like playing chess. He doesn't have any right against her because he gave it up in the divorce, right? Well, no, he received in the divorce a decree of divorce that says Alice gives to him the lodge. Well, but the problem was that Alice is saying I don't have any interest in the lodge. I got my other property. And I'm guessing what I'm saying is Alice saying that... It's kind of like a quit claim deed she gave to him on the lodge. If I got any, you can get any, but I don't think I got any. The quit claim deed would be in violation of the Alaska Native Allotment Act and in violation of federal regulations and in violation of the BIA policy. But we're saying it acts like a quit claim deed, but what it really is is a release of claim jointly that the parties executed in conjunction with their 1993 divorce resolution. Which release of claim would be invalid under the Alaska Native Allotment Act and under federal regulation and under decisions of the court. But it's not the same thing as a quit claim deed. I mean, there is a legal decision. I only threw a quit claim. I'm not suggesting that's what they got. Call it a quit claim, call it a release. What it is is an affidavit that she signed long ago. Basically, what we're saying is that Alice owns the property. So let me just ask you a question about... And we want that to happen, and then let's see what Alice does. If we restored the parties to the position that they were in in 1991, what does that do to the 1993 Alaska court judgment resolving the marital estate? Well, it gives the lodge to Dennis Torrey. And I don't mean to deceive this court, and so I won't, and I'll bring up a difficult fact. But, you know, in the action below in Chuit 2, there's an order that says that Dennis's claims against Alice are dismissed with prejudice. So I don't think we can go back, or we're going to have a hard time going back and saying you must comply with the Alaska divorce decree. But what I am saying is that Alice Torrey owns that property, and it belongs also to her heirs in perpetuity, her children and her grandchildren. I understand your argument, but I guess the question I was asking, and I'm not sure what doctrine this would invoke or not, we have a long-since closed Alaska judgment from the Superior Court which purports to adjudicate the property rights as between the ex-husband and the ex-wife. And if we grant you the relief that you are asking for, we are undercutting the basis of the Alaska Superior Court's judgment. And I'm not sure that's a wise thing for a federal court to do. Boy, I just, as a practical matter, I don't see why you'd be undercutting it at all. I just, I'm sorry, Your Honor, I don't follow that. Well, because that, as I understand the division of the property, it was predicated on the mutual release of claims and then the allocation of whatever other assets there were in the marital estate at the time. I guess why I don't understand your point is the divorce decree provides that Dennis gets the lodge. And if you vacate Chewett II, the lodge goes to Alice, and maybe Dennis has rights under his divorce decree, maybe Dennis doesn't have rights under his divorce decree to get the lodge. But once again, the Alaska Native Allotment Act controls. Alice can't give him the lodge unless they go through the process. And it's irrational for Alice to go and disinherit her family to give the property but gift it to a bunch of strangers. But the problem that I have is that Alice did get a deed. She got some deed to a different piece of property. And that deed to a different piece of property, as I understand it, I get nothing in the record that suggests that she believes the deed to this other piece of property doesn't extinguish any rights she has to the property Dennis wants. I guess what I say is all of that happened before 1991 when Judge Holland dismissed with prejudice all of the government's claims against Dennis Torrey. All of that happened. And it's not a question of the burden. All these issues could have been brought before Judge Holland more than a year before he dismissed with prejudice all the claims that the government makes in Chewett. Mr. Taylor, as I understand the state of the record, you're asking us to invoke the doctrine of equitable estoppel. What do we do with the fact that he's known for more than 20 years that she got a different piece of property from her uncle than the property that the parties contemplated was at issue? I guess quickly, this case is before you on a decision on summary judgment. That's a disputed fact, and material inferences should be drawn. Yes, he did know after about 1994. He found out that it had been a different piece of property. But he had a decree of divorce saying that he got it, and Patrick Chewett never did anything about this until 2005, and he was the owner of the property. So we have a factual issue as to why Dennis Torrey continued there. I think I understand your position. Thank you. Let's hear from Ms. Peterson. May it please the Court. I'm Elizabeth Ann Peterson on behalf of the United States. Mr. Torrey's predicament is of his own making. He took the risk of making an informal arrangement to acquire Alaska Native allotment land, which is restricted, in exchange for work, and in the agreement he arranged for that land to be transferred to his now ex-wife. When the land was transferred, it is true that in the original trespass action, rights were acquired by Alice Torrey, Mr. Torrey's ex-wife, but they were not property rights, and Judge Holland went to great trouble to make clear that what she had was a contractual interest and not a property interest. That contractual interest in specific performance on the contract resulted in the conveyance of property. Well, he had to, didn't he, because it was Indian land, so we had to go under a contractual interest so that he wouldn't be violating the act, right? Exactly, but it's significant that Judge Holland did not have the power to transfer a property interest to either of the Torreys. So the theory on which Mr. Torrey goes forward today, that Alice owns something under that judgment, is simply incorrect. She could not have acquired a property interest by virtue of that judgment. She acquired the right to demand that her uncle convey property subject to BIA approval. What property are you talking about now, the lodge? The lodge property was specifically described in the original decree by Judge Holland. All right, so she didn't own it, but who owns it? At this time, the Chewett family continues to own it. It was never transferred. There has been no BIA approval of any conveyance of that parcel. BIA approved a conveyance that turned out to be of a different parcel. And at the time that Judge Holland entered his judgment, he protected Mr. Torrey's interest by saying that in the event that there were any impediment to Alice's receipt of the five acres, he would retain jurisdiction to review further action, including restitution. So when Mr. Torrey learned that the conveyance was not of the lodge parcel, which was before his settlement with his ex-wife, It was before 1993? It was before 1993. And at the time of the settlement of the marital estate, both parties were well aware that Alice had been conveyed a different parcel and that neither party had any interest any longer in the lodge parcel. Judge Holland had stated more than once that Dennis Torrey had no interest, legal or equitable, in the land. And that's in the excerpts of the record at 75 and various other places. Is it true that the government represented to the court that the Chewetts had done everything that they were supposed to do under the summary judgment? It is true. So the government deceived the court? Well, Your Honor, ultimately The way I see it, the U.S. attorney went in and said, We've done all we need to do on this property, and it wasn't done. Arguably, that is correct, Your Honor. There are two problems with that, however. Two problems? It seems to me more than two. Right, right. First is, they shouldn't have done it in the first place. Right. But the basis for any claim to restricted native property on that basis has problems. For one thing, the U.S. attorney's representation was based on representations by the agency that it had processed this properly. And the United States attorney was entitled to rely on that and did not do anything affirmatively incorrect, which is the standard. Private practice, I would say, borders pretty close to malpractice for not checking the property description in the deed that the BIA prepared to make sure that that was the parcel that the court had ordered the uncle to convey. In fact, Alice went on to try to get her husband off that property based on that representation, didn't she? She did. And then she finds out the U.S. attorney had lied to the court, and she couldn't do anything about it. I do not think that it is at all appropriate to suggest that the U.S. attorney lied to the court. The U.S. attorney relied on representations by BIA officials who had gone through the paperwork that they had done their job properly. So he misrepresented, that's the best I can say? She may have had the tools at her disposal to have checked more thoroughly, and I do not suggest that her actions may not have been negligent. But to the extent that anyone relied to his or her detriment on those representations, it was not Dennis Torrey who had no interest at stake in those representations at all. The contractual claim that he had was as between himself and Alice Torrey. And when these unfortunate events were revealed, they made no effort to correct anything. They did not go back to the judge to explain what had happened and that the eventuality that he had provided for in his order had come to pass, that Alice had not been due to the lodge property. And when he settled his estate, his marital estate with Alice, Mr. Torrey allowed her to gain everything that had accrued to the marital estate from their contractual counterclaim, which was the only benefit that the judge was in a position to confer in his judgment. So although it is unfortunate that it has ultimately resulted in Mr. Torrey's trespass for the last two decades on this property, that is the result. He has no right, he has no claim, and he had recourse in 1991. Judge Holland actually went to some lengths to describe it. Well, not 1991, sometime between 1991 and when he discovered it before he signed the release in 1993. In 1993, that is correct. Sometime during that period. Yes, yes. My understanding is that it came to light in 1992 when Alice sought to evict him from the property. Did he use it as a defense? Excuse me? Did he use it as a defense? This is just, I couldn't find this in the record. It seemed to me she was trying to evict him from the property and she found out she couldn't. Did he use the fact she didn't own it as a defense? I don't think anything went forward on that trespass action. She sought to evict him through BIA, and BIA did research. Well, I was trying to find that because that would be absolute knowledge to you if there wasn't anything there. Well, it was the BIA who discovered the error, right? They sent a land surveyor or a land representative out there and he said, wait a second, this is not the same parcel that we're worried about. That's correct, Your Honor. Okay, and at that point Alice said, well, that's fine with me. I'll take that other parcel. That's correct, Your Honor, and it isn't clear in the record when Mr. Torrey learned of that, but it was within, it was before 1993 when he entered into a settlement that made very clear that both parties knew that a different parcel had been conveyed. And because of that, he certainly was within time, within a reasonable time, to go back to Judge Holland, who had shown some sympathy to his situation and would doubtless have attempted at least to get him restitution, but he didn't do it. What evidence do I have in the record that Alice said the deed to the wrong property is okay with me? I'm sorry, Your Honor. What evidence do I have in the record that would suggest that Alice is saying the deed to the wrong property to me is just fine, I don't need any more? There is an affidavit, and I cannot cite you the page of the excerpt set record, but it is in the current excerpt that explains. Isn't it in her affidavit, ER 93? That's what I would think. I was happy with the land I actually owned. That's what I saw. That is correct. And then I think there's a memo to the file from the BIA land representative who talked to her at the time, and she said she'd be happy to take the other five acres. Yes, and actually it's important, too, that in the BIA record there is some indication that the parties determined that the Chewitts agreed before any judgment was issued that they would be happy to get out of this litigation through a deed of property. So there wasn't any issue as to whether the district court's judgment exceeded its power with respect to the grant of some property because that was fully voluntary, which is consistent with the law. So the BIA's responsibility to these Native Alaskans was fully discharged. Both were happy with the outcome of any action on their agreement, and only Mr. Torrey was unhappy. Mr. Torrey had means at his disposal to remedy his difficulties in the early 90s but did not take advantage of them. So his defense to this trespass action is really completely without foundation. He could have had rights that he did not pursue and no longer has those rights, and he should, therefore, be evicted from the property. If there are no further questions. I think not. Thank you. Mr. Taylor. Briefly, the government's argument would set up the BIA as having power and authority greater than the federal court, which I don't think is appropriate. I mean, I think Judge Holland has ability. Isn't the historical reason for that, though, the agency's obligation to look out for the welfare of Native Americans? Of course the agency has that duty, but the federal court, after a full briefing and trial and everything else, has the ability to say what the federal court says, and the federal court's decision is final. But what's your response to Ms. Peterson's argument that, according to Alice, she learned on or after October 30, 1992, from the forester who went out there and looked at the land that there was a mistake, but he didn't go back to Judge Holland and say, Wait a minute, Your Honor, you said it was the lodge that was at issue in 1991, and you retained jurisdiction, so I could come back and seek relief? Well, the answer to that is Tahoe-Sierra Preservation Council, which both sides cite, and also U.S. v. Liquidators, in which the court makes very clear that you have the identity of claims, the identity of facts, if all the events that are relevant to the two actions occurred prior to the court's previous judgment. And the judgment in this case is 1991. All of this happened. All of it happened. The misdeeding of the property, the expressed misrepresentation by the U.S. attorney. But that doesn't answer my question of why did he sleep on his rights? Why didn't he go back? Well, we don't know that, and not in the record. And I think it's probably because Patrick Truitt was alive and probably. It's not in the record, but I mean Patrick Truitt was alive. Patrick Truitt didn't do anything about it. It's his heirs after 2000, after he passed away. Okay. Okay. Thank you very much. The case is submitted.
judges: Tashima, Tallman, Smith